**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.  00-6215-Cr-Dimitrouleas**

UNITED STATES OF AMERICA,
                              Plaintiff,

v.

RICHARD SCRIVER,
                              Defendant.
_____/

### NOTICE OF OBJECTIONS TO PRESENTENCE INVESTIGATION
### REPORT AND REQUEST DOWNWARD DEPARTURES

COMES NOW, the Defendant, RICHARD SCRIVER, by and through his undersigned counsel and respectfully moves for consideration of downward departures pursuant to U.S.S.G. §5K2.0 or as otherwise noted and also notices this Honorable Court pursuant to Rule 32, Fed.R.Crim.Proc., Rule 88.8, SD Fla. L.R., and U.S.S.G. §6A1.3 of his formal objections to portions of the PSR with respect to the following sections, pages, paragraphs and states:

**I.**

**PSR OBJECTIONS**

**A.    "Offense Conduct." PSR, p. 5 ¶8.**

1.    The PSR purports to recite the background of the Defendant's one and only (recorded) meeting with the CI at a cigar bar on Miami Beach. The PSR unfairly describes that recorded conversation which serves as the predicate for these charges.  The recorded conversation describes an extensive discussion



about the purchase and sale of commercial real estate. Admittedly, there was some discussion about the sale of Ecstasy. The discussions concerning Ecstasy were minimal compared to the real estate based discussions. However, the paragraph is written in a manner to suggest an overwhelming discussion of Ecstasy, with minimal conversation concerning real estate. The converse is true.[1]

### B. Role Assessment. PSR, p. 6, ¶13.

2. The government requested and this Honorable Court found that Beeson deserved a minor role adjustment. The Defendant admits that he did provide Ecstasy to Beeson. However, in the same manner that the government suggests that Beeson occupied a "minor" role, i.e. as a result of steering the transaction to Scriver (an issue even incorporated within Beeson's Plea Agreement), Scriver merits the same and certainly not harsher treatment merely because he exercised his Sixth Amendment right to trial. This Defendant relies on the doctrine of the law of the case, the Fifth Amendment's equal protection component, the United States Sentencing Guidelines, and notions of "fundamental fairness" to equate his role to that of Beeson. Factually, Scriver was to Beeson what Beeson was to the CS. Merely because Beeson chose to cooperate with law enforcement, whereas the Defendant ultimately chose trial

---

[1] Given the fact that this Honorable Court tried this cause, this court may simply disclaim reliance upon the disputed facts since they may not impact the guideline and sentence calculations. Rule 32(c)(1), Fed.R.Crim.Proc. ("For each matter controverted, the court must

instead of cooperation,[2] is no reason that Beeson and this Defendant should be dissimilarly treated under the law for the limited purposes of role assessment. The government is vested with discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek. Cf. *United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.")    The government may not wield its prosecutorial power in an invidious or arbitrary manner.  However, this Court and not the prosecution, has exclusive jurisdiction in determining the application of the guidelines to any set of facts.  Role issue was and is for the court to decide; not the prosecutor.

3.    Here, the Defendant was not the ultimate supplier of the drugs.  In fact, this Defendant never supplied Ecstasy or any other drug to anyone  prior to Beeson reaching out with the prospect of a multi-million dollar real estate transaction.    Providing Ecstasy was just a tangent to the "deal" of overriding importance, the sale of a number of commercial real estate parcels.

How many times has this Honorable Court witnessed a drug transaction in which the criminal defendant expected no profit for the sale of the drugs and was only doing the drug transaction as an accommodation in order to consummate a

make this a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in or will not affect, sentencing.")

3

real estate deal after the Defendant was left impoverished by a divorce?  The Defendant respectfully invites this Honorable Court to make a role finding consistent with its finding in Beeson.

4.     The most recent pronouncement on role from the Eleventh Circuit provides this Honorable Court plenary discretion with which to make its findings. Cf. *United States v. DeVaron*, 175 F.3d 930, 938 (11th Cir.1999) (en banc ) (holding that determination of defendant's role in the offense is an ultimate finding of fact subject to the same clear error review as were the subsidiary facts on which it was based).

## C.     **OFFENSE LEVEL COMPUTATION, PSR, p. 8**

5.     **Adjustment for Acceptance of Responsibility and Request for Safety Valve Consideration, PSR, p.8, ¶25**

The Defendant respectfully invites this Court to provide a 2 level adjustment for acceptance of responsibility and a 2-level safety valve adjustment. This Circuit as well as the Third, Sixth, Seventh, Ninth, and Tenth Circuits have concluded that the entrapment defense and acceptance of responsibility reduction are compatible.  See, *Joiner v. United States*, 103 F.3d 961, 963 (11th Cir.) ("[The defendant] would not have been barred as a matter of law from receiving an adjustment merely because he asserted an entrapment defense at trial, even though some courts have viewed the assertion of an entrapment

---

[2] As the Court is aware, this choice was driven by the Defendant's fervent desire to avoid

4

defense as the virtual antithesis of acceptance of responsibility. Rather, as with cases involving any other defense, whether a defendant has accepted responsibility is a fact-based question which requires the district court to carefully review all of the evidence bearing on a particular defendant's contrition.") (citation omitted), cert. denied, 520 U.S. 1246 (1997); *U.S. v. Demes*, 941 F.2d 220, 222 (3d Cir.1991) ("[I]t is conceivable to hypothesize a case in which a plea of entrapment would not be inconsistent with the acceptance of responsibility...."); *United States v. Fleener*, 900 F.2d 914, 918 (6th Cir.1990) ("[W]e find that the district court did not err in considering a reduction for acceptance of responsibility even though [the defendant] raised an entrapment defense at trial. Such a defense is no less inconsistent with the Guidelines provision than is a plea of not guilty, which does not raise an absolute bar to a court's consideration."); *United States v. Corral-Ibarra*, 25 F.3d 430, 440 (7th Cir.1994) (finding that an entrapment defense if pleaded in good faith "may possibly qualify" for a § 3E1.1 reduction, but in such a case "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct"); *United States v. Ing*, 70 F.3d 553, 556 (9th Cir.1995) ("The assertion of an entrapment defense is not necessarily incompatible with acceptance of responsibility."); *United States v. Davis*, 36 F.3d 1424, 1435 (9th Cir.1994): ("[T]he district court could not have found that [the defendant] had not accepted

---

deportation to Canada.

5

responsibility solely because he presented an entrapment defense at trial."); *U.S. v. Garcia*, 182 F.3d 1165, 1172 (10th Cir. 1999) (assertion of entrapment defense did not preclude downward adjustment for acceptance of responsibility).

The Defendant incorporates by reference his post arrest statements, post arrest cooperation and trial testimony. In addition to submitting to extensive debriefing, the Defendant, on multiple occasions, wore a wire-transmitting device or alternatively taped calls from his supplier or their "collection agents." The Defendant was threatened by his suppliers and, as requested by the DEA, he wore a transmitting device in order to record those conversations. Beyond that, prior to sentencing the Defendant provided a statement to the Probation Office accepting responsibility for his behavior leading to conviction.

The Defendant furthermore respectfully invites this court to review these statements in their entirety to determine whether it also merits safety valve consideration. At trial and before, the Defendant made startling admissions of serious misconduct, which serves as a factual basis for his conviction. Essentially, he took the witness stand and said, "I did it." However, he claimed that the law of entrapment provided a defense. Although the jury disagreed that the facts provided a "justification" defense, he did make extraordinarily incriminating admissions against his penal interests, which merits sentencing consideration under guideline sections 3E1.1 and 5C1.3. The Defendant did accept responsibility for his misconduct before, at trial, and thereafter.

6.    It often appears that the Probation Office reflexively recommends denying relief to a defendant who exercises his or her constitutional right to a trial by jury.    It bears reemphasizing that the adjustment for acceptance of responsibility reduction is not automatically precluded by a decision to go to trial, §3E1.1 comment. (n.2). The Defendant respectfully invites the court to consider defendant's reasons for doing so. *United States v. Broussard*, 987 F.2d 215, 224 (5th Cir. 1993) (remanded: error to deny reduction to defendant who refused plea agreement and went to trial to contest whether law applied to his conduct – he did not deny "essential factual elements of guilt"). Here, although the Defendant argued insufficiency of the evidence, he did so by admitting participation and relying solely upon the claim that the law of entrapment applied to his conduct. Additionally, as the Court is aware, he would have accepted the plea bargain offered to him but for his concern about deportation.

7.    With regard to the "safety valve" issue, in *United States v. Espinosa*, the Eleventh Circuit reviewed whether the district court should defer to the government's position as to the defendant's compliance with the fifth safety-valve requirement of providing truthful information to the government.   172 F.3d 795 (11th Cir. 1999).   See 18 U.S.C. §3553(f)(5).   At sentencing the government objected to safety-valve consideration and alleged that Espinosa had not told the truth regarding the quantity of cocaine involved in the trafficking scheme. Espinosa claimed thirty kilograms were involved.   However, the government

7

asserted that it was three hundred kilograms. The district court accepted the

government's position without making its own findings. The Eleventh Circuit

ruled,

> The district court erred in deferring to the Government;
> the responsibility for determining the truthfulness of the
> information the defendant provided to the Government
> was the courts. See *United States v. White*, 119 F.3d
> 70, 73 (1st Cir. 1997); *United States v. Gambino*, 106
> F.3d 1105, 1110 (2nd Cir. 1997); *United States v.
> Meduka*, 104 F.3d 891, 895 (6th Cir. 1997); *United
> States v. Thompson*, 81 F.3d 877, 880 (9th Cir. 1996).

*Espinosa*, 172 F.3d at 795.

Therefore, the Defendant respectfully moves this Honorable Court to grant

sentencing consideration under U.S.S.G. §3E1.1 for acceptance of responsibility,

as well as under 28 U.S.C. §3553(f)(5) and U.S.S.G. §5C1.3, commonly referred

to as "safety valve."

## II.

## REQUEST FOR DOWNWARD DEPARTURE CONSIDERATION

### A.    Preface

The Probation Office recommends a Total Offense Level of 26, with a

recommended guideline imprisonment range of 63-78 months. See PSR, p. 15,

¶62. Based upon the reasons set forth below, beyond his objections, the

Defendant respectfully requests consideration of a downward departure.

8

**B.    This Court's Sentencing Hands Are Not Tied by the Base Offense Levels Under the Guidelines.**

Promulgation of the Sentencing Guidelines has placed certain stated limitations on the sentencing court's exercise of discretion, but the Guidelines have neither handcuffed the sentencing judge nor placed him or her in a straightjacket. See, e.g., Gerald B. Tjoflat, The Untapped Potential for Judicial Discretion Under the Federal Sentencing Guidelines: Advice for Counsel, 55 Federal Probation 4 (1991); William W. Wilkins, Jr., Plea Negotiations, Acceptance of Responsibility, Role of the Offender, and Departures: Policy Decisions in the Promulgation of Federal Sentencing Guidelines, 23 Wake Forest L.Rev. 181, 196 (1988) (departure power gives district judges flexibility to impose individualized sentences);   Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above*, 22 Syracuse L.Rev. 635, 663 (1971) (Circuit courts must give do regard to "the superiority of [the district court's] nether position).

A sentencing court has the authority to impose a sentence outside the guideline range if it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described." 18 U.S.C. §3553(b) (1994);  see also USSG §5K2.0 (1997) (policy statement explaining appropriate circumstances justifying departure under 18 U.S.C. §3553).   In *Koon v. United States*, the

Supreme Court clarified this aspect of the statute, holding that the unusual circumstances justifying the departure must take the case outside the "heartland" of cases contemplated by the applicable guidelines. See *Koon v. United States*, 518 U.S. 81, 94-96 (1996). If a factor is encouraged, see, e.g., §5K2.13 (Diminished Capacity), a court is authorized to depart from the applicable guideline if the guideline does not already take that factor into account. See *Koon*, 116 S.Ct. at 2045. If a factor is discouraged, see, e.g., §5H1.2 (education and vocational skills), or is an encouraged factor already taken into account by the applicable guideline, a district court may depart only if the factor is present to an exceptional degree or in some other way makes the case distinguishable from an ordinary case where the factor is present.

### 1.    Imperfect Entrapment, §5K2.12

A skillful prosecutor presented the government's case. The jury convicted this Defendant, notwithstanding a factually supported entrapment defense. Although the Eleventh Circuit has not yet ruled on the issue, many circuits have recognized that Section 5K2.12 was meant to apply precisely to those situations where a complete defense of entrapment was not present. Cf. U.S.S.G. §5K2.12 (Coercion and Duress as grounds for downward departure). That guideline notes,

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the

10

> applicable guideline range. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party....

U.S.S.G. §5K2.12, p.s.

No agent threatened the defendant. However, it was an extraordinarily skillful conman CI who initially proposed the illegal activity and held out the prospect of a One Million Dollar real estate commission in exchange for a relationship cemented by an Ecstasy transaction. At first, there was no mention of such a large quantity of pills. This sort of aggressive encouragement of wrongdoing, the utilization of such extraordinary sums of money placed before a recently divorced, psychologically devastated, and emotionally weakened non-drug offender, although not amounting to a complete defense, may be used as a basis for departure under Section 5K2.12.

Nearly the same facts, but with the use of an agent as the provocateur, served as the basis of an approved downward departure in *United States v. Garza-Juarez*, 992 F.2d 896 (9th Cir. 1993). Therefore, the imperfect entrapment defense serves as a basis for downward departure. See, *United States v. Amparo*, 961 F.2d 288, 292 (1st Cir.) (jury's rejection of duress defense does not preclude downward departure under section 5K2.12), *cert. denied sub nom.*

11

*Sanchez v. United States*, 506 U.S. 878, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *United States v. Cheape*, 889 F.2d 477, 480 (3d Cir.1989) (vacating sentence when district court ruled that jury's rejection of coercion defense precluded downward departure under section 5K2.12); *United States v. Whitetail*, 956 F.2d 857, 863 (8th Cir.1992) (vacating sentence when district court ruled that jury's rejection of battered-woman defense precluded application of section 5K2.12); see also *United States v. Giles*, 768 F.Supp. 101, 103 (S.D.N.Y.) (granting downward departure based on "the manner in which [defendant] was set up for this crime by the Government's agent," even though jury rejected entrapment defense), *aff'd*, 953 F.2d 636 (2d Cir.1991) (table), *cert. denied*, 503 U.S. 949 (1992); *United States v. Nelson*, 740 F.Supp. 1502, 1516 (D.Kan.1990) (granting downward departure under section 5K2.12 based on coercion even though jury rejected coercion defense; citing *Cheape*).

The Ninth Circuit has recognized that a downward departure may be appropriate when government agents used persuasion alone, not threats. In *United States v. Takai*, 941 F.2d 738 (9th Cir.1991), the defendant participated in a scheme to bribe a government official. The district court granted a downward departure in part because:

> [t]he seriousness of defendants' participation is mitigated by the conduct of the government agent. While there was no allegation of entrapment, there was evidence at the sentencing hearing that Agent Goldman's conduct influenced defendants' decisions to continue playing a pivotal role.

12

*Id.* at 741. The Ninth Circuit affirmed the sentence, even though the agent's

conduct "did not constitute entrapment in a legal sense." *Id.* at 744.

Most recently, the Second Circuit addressed the issue in *U.S. v. Bala*

stating,

> "While to date we have not decided whether imperfect
> entrapment is proscribed by the guidelines as a ground
> for downward departure, we can find nothing in the
> guidelines to prohibit a district court from considering
> conduct by the government that does not give rise to an
> entrapment defense but that is nonetheless "aggressive
> encouragement of wrongdoing." Garza-Juarez, 992
> F.2d at 912; see also *U. S. v. Giles*, 768 F.Supp. 101,
> 103-04 (S.D.N.Y.), aff'd without op., 953 F.2d 636 (2d
> Cir.1991). Moreover, the policy statement in Section
> 5K2.12 can reasonably be read to authorize such a
> departure in appropriate cases. Nevertheless, it is for
> the district courts to decide for themselves whether, in a
> particular case, a downward departure based on
> imperfect entrapment would remove that case from the
> "heartland of the applicable Guideline." See *United
> States v. Bonnet- Grullon*, 212 F.3d 692, 700 (2d
> Cir.2000) ("The determination of whether a case is
> within the heartland of the applicable guideline cannot
> be a matter of generalization.").

2000 WL 1877041, *3 (2nd Cir. (N.Y.))

This Court is faced with a similar situation.   Based on the precedents

discussed above, therefore, the imperfect entrapment defense does serve as a

basis for downward departure.

### 2.    Diminished Capacity, U.S.S.G. 5K2.13

The Defendant merits consideration for a departure premised upon diminished capacity.[3]  The Commission expressly encourages district courts to consider whether the defendant suffered from "significantly reduced mental capacity" at the time of the offense when deciding whether to grant a downward departure.   See U.S. Sentencing Guidelines Manual § 5K2.13 (1998). The application note defines "significantly reduced mental capacity" to mean that the defendant "has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." Id. application n. 1. The amended section also provides that, "[i]f a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense." Id. §5K2.13.  See also, *U.S. v. Steele*, 178 F.3d 1230, 1240 (11th Cir. 1999)

### 3.    Extraordinary "Acceptance of Responsibility"

Undersigned counsel has researched the statistical compilations of the Sentencing Commission, which addresses both the percentile of downward departures granted and the subset percentile of the classification for those downward departures.  "Acceptance of responsibility" (which we can assume is "extraordinary acceptance") is labeled as the reason for downward departures in

---

[3] The medical report has not been received by counsel.  A copy will be submitted upon receipt.

14

a significant number of those cases. See *1999 Source Book of Federal Statistics*, Table 25, Reasons Given by Sentencing Courts Upward and Downward Departures, "general mitigating circumstances", numbering 1254 constituting 13%; acceptance of responsibility, numbering 148, constituting 1.5%; *1998 Source Book of Federal Statistics*, Table 25, Reasons for Downward Departures, "general mitigating circumstances", numbering 1054, 14%; acceptance of responsibility, numbering 121, 1.6%. See Exhibits A and B.

This Defendant confessed as soon as he was arrested. He provided law enforcement with the identity of his drug supplier. He provided the background facts concerning his criminal involvement. He wore a wire while meeting with collections agents sent by his supplier. He recorded threatening calls from his suppliers. He worked with law enforcement agents as soon as he was arrested. He related his prior conspiratorial conversations with his co-defendant. The Defendant provided the Drug Enforcement Administration with documents evidencing the identity of his supplier, provided law enforcement with a fixed location of their warehouse, and expressed remorse in very tangible terms. He accepted responsibility in extraordinarily tangible terms.

15

### 4.     **Aberrant Behavior**

The new guideline states,

> #### §5K2.20. **Aberrant Behavior** (Policy Statement)
>
> A sentence below the applicable guideline range may
> be warranted in an extraordinary case if the defendant's
> criminal   conduct   constituted   aberrant   behavior.
> However, the court may not depart below the guideline
> range on this basis if (1) the offense involved serious
> bodily injury or death; (2) the defendant discharged a
> firearm or otherwise used a firearm or a dangerous
> weapon; (3) the instant offense of conviction is a serious
> drug trafficking offense; (4) the defendant has more
> than one criminal history point, as determined under
> Chapter Four (Criminal History and Criminal Livelihood);
> or (5) the defendant has a prior federal, or state, felony
> conviction, regardless of whether the conviction is
> countable under Chapter Four.

The Defendant respectfully invites this Honorable Court to find that
Scriver's misconduct, in this case, amounts to aberrant behavior and constitutes
an additional basis for downward departure consideration.  In *United States v.
Withrow*, 85 F.3d 527, 529 (11th Cir. 1996), the Eleventh Circuit concludes that
the district court has discretion to depart downward from Sentencing Guidelines
after making careful factual determination that defendant's offense conduct
constituted single, aberrant act.    "The aberrance of a criminal act is an
encouraged factor for departure." *United States v. Talk*, 158 F.3d 1064, 1072
(10th Cir.1998), cert. denied, 525 U.S. 1164 (1999).    The determination of
whether an individual defendant's offense conduct is aberrational, like the

16

decision to depart, requires consideration of unique factors not readily susceptible of useful generalization. In *United States v. Withrow*, 85 F.3d 527, 529 (11th Cir. 1996), in a matter of first impression the Eleventh Circuit notes, "Here, the district court's decision to refuse *Withrow's* request for downward departure was based explicitly on the court's understanding that it lacked the discretion to consider such a request. In light of the court's unambiguous statement that it was not authorized to depart in this case, we conclude that the court's decision is reviewable. We therefore address whether the Sentencing Guidelines permit a downward departure based on the specific factor advanced by *Withrow*."

The Eleventh Circuit notes that U.S.S.G. Ch. 1, Pt. A, 4(d) provides a specific framework to which the court must refer in sentencing a first-time offender who likely would have received a probationary sentence under the pre-guidelines regime. Scriver meets this generalized qualification. The concluding sentence of the referenced section states that "**[t]he Commission, of course, has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures.**" *Id.* (Emphasis added). *Withrow* notes, "All circuits that have addressed and resolved the question posed by this appeal have concluded that single acts of aberrant behavior were excluded from consideration in the formulation of the guidelines and thus might justify sentences below the guideline range even in cases where

17

probation is not a viable option.  See, e.g., *United States v. Duerson*, 25 F.3d 376, 380 (6th Cir.1994)."

III.

### CORRECTED OFFENSE LEVEL COMPUTATION, PSR, P. 8 ¶¶18-26.

In conclusion, the Defendant respectfully invites this Honorable Court to consider the following corrected PSR calculations:

PSR, ¶18, Base Offense Level:

| | |
|---|---|
| 289.6 of MDA kilograms of cocaine, §2D1.1(conversion table) | 26 |
| PSR, ¶21, Adjustment for Role in the Offense. | -2 |
| PSR ¶25 Adjustment for Acceptance of Responsibility. | -2 |
| PSR, ¶ Safety Valve. | -2 |
| PSR, ¶30 Total Offense Level. | 18 |
| PSR, ¶ Guideline Range. | 27-33 months |

**<u>Departure Findings</u>**

**Imperfect Entrapment,  §5K2.12**

**Diminished Capacity, U.S.S.G. §5K2.13**

**Extraordinary "Acceptance of Responsibility"**

**Aberrant Behavior**

**Departure Guideline Range    Zone C            12 - 16 months**

**Zone C allows intermediate sentencing sanctions.**

WHEREFORE, Defendant respectfully files these objections and prays that this Honorable Court enter an order finding that a downward departure is merited. The Defendant respectfully seeks findings that individually or as a consequence of a combination of these factors this is an unusual or atypical case such that this exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described in the Guidelines.

Respectfully submitted,

Neil M. Schuster
407 Lincoln Road, Suite 11-B
Miami Beach, FL   33139
Telephone: (305) 673-3737

By: _____
Neil M. Schuster
Florida Bar No. 216909

Jeanne Baker, Esq.
2937 S.W. 27 Avenue, #202
Miami, Florida  33133
Office: 305-443-1600
Fl. Bar #: 880700

David Tucker, Esq.
2600 S. Douglas Road, Suite 1108
Coral Gables, Florida  33134-6143
Office: 305-461-3627

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to Dana Washington, Assistant United States Attorney, Office of the United States Attorney, 500 East Broward Blvd., Ft. Lauderdale, Florida 33301 and Todd Eisinger, U.S. Probation Officer, Room 315, U.S. Courthouse, 300 N.E. First Avenue, Miami, Florida 33132-2126 this $\underline{22}$ day of February, 2001.

By: _____
Neil M. Schuster

## Tables 24-25

## REASONS GIVEN BY SENTENCING COURTS FOR UPWARD AND DOWNWARD DEPARTURES
### Fiscal Year 1998

### Table 24

| REASONS FOR UPWARD DEPARTURES[1] | Number | Percent |
|---|---|---|
| Criminal history category does not reflect seriousness | 159 | 33.9 |
| Extreme conduct | 39 | 8.3 |
| Risk of future conduct based on prior conduct or record | 38 | 8.1 |
| General aggravating circumstances | 30 | 6.4 |
| Pursuant to plea agreement | 25 | 5.3 |
| Weapons/dangerous instrumentalities | 25 | 5.3 |
| Nature or seriousness of the offense | 14 | 3.0 |
| Extreme psychological injury | 13 | 2.8 |
| Criminal purpose | 13 | 2.8 |
| Physical injury | 12 | 2.6 |
| Dangerous or inhumane treatment | 10 | 2.1 |
| Death | 7 | 1.5 |
| Disruption of governmental function | 7 | 1.5 |
| Monetary value does not reflect extent of harm | 6 | 1.3 |
| Several persons injured | 5 | 1.1 |
| Further obstruction of justice | 5 | 1.1 |
| Guideline factors do not reflect offense seriousness | 5 | 1.1 |
| Outside applicable time period, but portion of income | 4 | 0.9 |
| Deportation | 4 | 0.9 |
| Child Abuse | 3 | 0.6 |
| Drug amount or drug purity | 3 | 0.6 |
| Public welfare | 2 | 0.4 |
| Other | 40 | 11.3 |

### Table 25

| REASONS FOR DOWNWARD DEPARTURES[1] | Number | Percent |
|---|---|---|
| Deportation | 1,449 | 19.2 |
| Pursuant to plea agreement | 1,421 | 18.8 |
| General mitigating circumstances | 1,054 | 14.0 |
| Criminal history category does not reflect seriousness | 748 | 9.9 |
| Isolated incident/aberrant behavior | 598 | 7.9 |
| Family ties/responsibilities | 363 | 4.8 |
| Physical condition | 222 | 2.9 |
| Diminished capacity | 192 | 2.5 |
| Mental/emotional conditions | 131 | 1.7 |
| Not representative of the heartland | 131 | 1.7 |
| Acceptance of responsibility | 121 | 1.6 |
| Rehabilitation | 114 | 1.5 |
| Coercion and duress | 76 | 1.0 |
| Age | 75 | 1.0 |
| Mule/Role in the offense | 48 | 0.6 |
| Dollar amount | 42 | 0.6 |
| Cooperation (motion unknown) | 40 | 0.5 |
| Adequate to meet purposes of sentencing | 40 | 0.5 |
| Community ties | 36 | 0.5 |
| Voluntary disclosure (§5K2.16) | 36 | 0.5 |
| Sufficient punishment | 28 | 0.4 |
| Lesser harm | 20 | 0.3 |
| Other | 557 | 7.4 |

[1] Of the 50,754 cases, 391 were recorded as upward departures. Information on departure reasons was available in 377 of these cases which cited 469 reasons for upward departure. Courts often provided more than one reason for departure; consequently, the percentages across all reasons for departure may add up to more than 100 percent. The "Other" category includes all reasons provided less than two times among relevant cases.

[1] Of the 50,754 cases, 6,509 were recorded as downward departures. Information on departure reasons was available in 6,273 of these cases which cited 7,542 reasons for downward departure. Courts often provided more than one reason for departure; consequently, the percentages across all reasons for departure may add up to more than 100 percent. The "Other" category includes all reasons provided less than 20 times among relevant cases. Cases in which substantial assistance was given as a reason for a downward departure were not included in this table. Descriptions of variables used in this tables are provided in Appendix A.

SOURCE: U.S. Sentencing Commission, 1998 Datafile, USSCFY98.

EXHIBIT A

# REASONS GIVEN BY SENTENCING COURTS FOR UPWARD AND DOWNWARD DEPARTURES
## Fiscal Year 1999

### Tables 24-25

### Table 24

| REASONS FOR UPWARD DEPARTURES[1] | Number | Percent |
|---|---|---|
| Criminal history category does not reflect seriousness | 126 | 32.6 |
| Extreme conduct | 39 | 10.1 |
| Risk of future conduct based on prior conduct or record | 33 | 8.5 |
| Extreme psychological injury | 23 | 6.0 |
| General aggravating circumstances | 19 | 4.9 |
| Pursuant to plea agreement | 14 | 3.6 |
| Nature or seriousness of the offense | 12 | 3.1 |
| Physical injury | 10 | 2.6 |
| Criminal purpose | 7 | 1.8 |
| Death | 6 | 1.6 |
| Several persons injured | 6 | 1.6 |
| Large number of aliens | 5 | 1.3 |
| Guideline factors do not reflect offense seriousness | 4 | 1.0 |
| Weapons/dangerous instrumentalities | 4 | 1.0 |
| Disruption of governmental function | 4 | 1.0 |
| Monetary value does not reflect extent of harm | 4 | 1.0 |
| Public welfare | 3 | 0.8 |
| Further obstruction of justice | 3 | 0.8 |
| Property damage or loss | 3 | 0.8 |
| Drug amount or drug purity | 2 | 0.5 |
| Negligence involved | 2 | 0.5 |
| Child abuse | 2 | 0.5 |
| Deportation | 2 | 0.5 |
| Other | 55 | 14.2 |

### Table 25

| REASONS FOR DOWNWARD DEPARTURES[2] | Number | Percent |
|---|---|---|
| Pursuant to plea agreement | 1,619 | 16.7 |
| General mitigating circumstances | 1,254 | 13.0 |
| Criminal history overrepresents defendant's involvement | 1,018 | 10.5 |
| Fast track | 936 | 9.7 |
| Deportation | 849 | 8.8 |
| Offense behavior was an isolated incident | 818 | 8.4 |
| Family ties and responsibilities | 492 | 5.1 |
| Physical condition | 274 | 2.8 |
| Diminished capacity | 265 | 2.7 |
| Rehabilitation | 194 | 2.0 |
| Not representative of the heartland | 193 | 2.0 |
| Acceptance of responsibility | 148 | 1.5 |
| Mental and emotional conditions | 117 | 1.2 |
| Age | 101 | 1.0 |
| Coercion and duress | 79 | 0.8 |
| Mule/role in the offense | 74 | 0.8 |
| Adequate to meet purposes of sentencing | 58 | 0.6 |
| Cooperation (motion unknown) | 44 | 0.5 |
| Drug dependence/alcohol abuse | 37 | 0.4 |
| Time served | 37 | 0.4 |
| Voluntary disclosure (§5K2.16) | 35 | 0.4 |
| Community ties | 33 | 0.3 |
| Dollar amount | 29 | 0.3 |
| Sufficient punishment | 27 | 0.3 |
| Victim's conduct | 27 | 0.3 |
| Deterrence | 26 | 0.3 |
| Previous employment record | 22 | 0.2 |
| Lesser harm | 21 | 0.2 |
| Restitution | 20 | 0.2 |
| Other | 836 | 8.6 |

[1] Of the 55,557, 313 were recorded as upward departures. Information on departure reasons was available in 308 of these cases which cited 386 reasons for upward departure. Counts often provided more than one reason for departure; consequently, the percentages across all reasons for departure may add up to more than 100 percent. The "Other" category includes all reasons provided fewer than two times among relevant cases.

[2] Of the 55,557 cases, 8,304 were recorded as downward departures. Information on departure reasons was available in 8,119 of these cases which cited 9,683 reasons for downward departure. Counts often provided more than one reason for departure; consequently, the percentages across all reasons for departure may add up to more than 100 percent. The "Other" category includes all reasons provided fewer than 20 times among relevant ones. Cases in which substantial assistance was given as a reason for a downward departure were not included in this table. Descriptions of variables used in these tables are provided in Appendix A.

EXHIBIT B