UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6215-CR-DIMITROULEAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

RICHARD SCRIVER,

        Defendant.
_____/

**NIGHT BOX FILED**
MAR - 6 2001
CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSI

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney and submits the following response pursuant to Administrative Order 95-02 and Fed. R. Crim. P. 32, to defendant's objections to the Presentence Investigation Report ("PSI").

### Specific Offense Characteristics

#### *A. Minor Role*

The United States opposes a two-level sentencing adjustment based on the Scriver's role in the offense. To garner the mitigating role in the offense adjustment, Scriver is required to establish that he was either a minor participant, i.e., one who is "less culpable than most other participants, but whose role could not described as 'minimal,'" USSG §3B1.2, comment. (n. 3), or a minimal participant, i.e., one who is plainly the least culpable of those involved in the conduct of the group. USSG §3B1.2(a), comment. (n.1). The defendant has the burden of proving by the preponderance of the evidence his entitlement to a mitigating adjustment at sentencing. *United States v. Gates*, 967



F.2d 497, 501 (11th Cir.), cert. denied, 506 U.S. 1011 (1992).

In the case at bar, Scriver argues first that he should receive a minor role reduction because co-conspirator James Beeson received the reduction. He argues that he was no more culpable than Beeson. This position is incorrect. According to the testimony of James Beeson, Scriver first sent him several MDMA pills as a sample and told him that he would be able to supply MDMA in the future. In addition, although Scriver was not the ultimate supplier of the MDMA, his role in the narcotics transaction nonetheless was a crucial one.

The court is not obliged to find that the defendant is the least culpable participant in the cocaine importation simply because she may have done less than some other participants. "To the extent that [a] district court base[s] its [§3B1.2] determination solely upon the relative culpability of [a defendant] and his co-conspirators, it miscontrue[s] the law." United States v. Ajmal, 67 F.3d 12, 18 (2d Cir. 1995). Rather, the defendant must do enough less so that he at best was "peripheral to the advancement of the illicit activity." United States v. Thomas, 932 F.2d 1085, 1092 (5th Cir.), cert. denied, 502 U.S. 895, 962 (1991) and 502 U.S. 1038 (1992).

The Eleventh Circuit has set forth a two-part test for evaluating whether a defendant is entitled to a minor role adjustment. DeVaron, 175 F.3d at 940. Under DeVaron, the sentencing court must first look to the defendant's role in the conduct for which he is being held accountable. Id. The Court made clear that "[w]here the relevant conduct attributable to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which she was a minor participant but for which she was not held accountable." 175 F.3d at 941. In the case at bar, the defendant is being held accountable only for the amount of MDMA that he actually possessed and distributed to his co-

2

conspirators.

The sentencing court must next compare the defendant's role as compared to other participants in the relevant conduct. DeVaron at 944. In order for the defendant to be entitled to a minor role reduction, the "district court must determine that the defendant was less culpable than most other participants in her relevant conduct. Id. In the instant case, the only other participants were James Beeson, the DEA CI and Scriver's supplier, who did not take part in the negotiations. Compared to those individuals, the defendant's role as the person who actually provided the MDMA is a significant one. Scriver was responsible for contacting the source of supply, arranging for the delivery, taking possession of a significant number of MDMA pills, delivering those pills to the other participants and picking up the payment afterwards. Scriver's role was certainly not peripheral to the criminal activity, it was instead vital to the success of the transaction. Accordingly, a minor role reduction is not warranted.

### *B. Acceptance of Responsibility*

Scriver contends that he should receive a two level decrease for acceptance of responsibility. To begin with, when the defendant pleads not guilty, goes to trial, vigorously cross-examines the government's witnesses, puts on witnesses of his own, and does not apologize for his actions until after trial, this is not considered accepting responsibility. See, e.g., *United States v. Bennett*, 928 F.2d 1548, 1557 (11th Cir. 1991) (affirming denial of adjustment for acceptance of responsibility where defendant pled not guilty and claimed self-defense at trial for retaliatory shooting of a confidential informant). Accordingly, such a defendant is generally not entitled to the corresponding Guidelines reduction. As the Application Notes to §3E1.1 ( Acceptance of Responsibility) state:

This adjustment is not intended to apply to a defendant who puts the government to its

3

> burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction at trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily on pre-trial statements and conduct.

U.S.S.G. 3E1.1, Application Note 2.

Although conviction after trial "does not automatically preclude a defendant from consideration for such a reduction, "the circumstances and nature of Scriver's trial was not one of the "rare situations" in which a defendant who exercised his constitutional right to trial "clearly demonstrate[d] an acceptance of responsibility for his criminal conduct." USSG §3E1.1, comment (n.2).

"Although a guilty plea, when combined with an admission of criminal conduct, 'will constitute significant evidence of acceptance of responsibility,' this evidence may be outweighed by 'conduct of the defendant that is inconsistent with such acceptance of responsibility.'" *United States v. Wright*, 117 F.3d 1265, 1275 (11th Cir.), cert. denied, 118 S. Ct. 584 (1997), *modified in part*, 133 F.3d 1412 (11th Cir. 1998) ( quoting USSG § 3E1.1, comment. (n.3)). Scriver's shifting of the blame of his involvement is not an affirmative acceptance of his responsibility. *United States v. Shores*, 966 F.2d 1383, 1388 (11th Cir.), *cert. denied*, 506 U.S. 927 (1992). While Scriver suggests that he accepted responsibility for his actions and was nothing but truthful at trial, the government suggests that his testimony at trial was inconsistent with what he had previously told the investigating agents and contained instances of outright lies. To begin with, Scriver denied that he had sent MDMA

4

samples to James Beeson prior to the drug deal. He admitted that he had sent MDMA to Beeson, however he testified that he sent the tablets out of the blue as an unsolicited gift. He then falsely testified that he had never before arranged a narcotics deal. This contradicted his statement to agents that he had arranged a previous MDMA deal for his tenant "Gord Ellis" in order to facilitate Ellis' payment of back rent. At trial he admitted knowing the people involved and admitted that they "may have" been involved in an MDMA deal, however he denied being involved. He then testified that in this particular deal, he was simply going to give his supplier Beeson's pager number and have no involvement with payment for the drug deal. This testimony directly contradicted James Beeson's testimony that at the time of the arrest, the participants were all heading to pick-up the drug payment money. In each instance, Scriver, instead of accepting responsibility for his actions, attempted to either completely minimize his role or shift blame to others. A defendant's statements regarding his motivation are relevant in that they shed light on the sincerity of an asserted acceptance of responsibility. Where, as here, a defendant concocts a story that excuses his illegal conduct, a court may find no acceptance of responsibility. *United States v. Wolfe*, 71 F.3d 611(6th Cir. 1994); *United States v. Jones*, 55 F.3d 289, 295 (7th Cir.) ("grudging and incomplete admission, accompanied by an excuse to minimize his own culpability, does not indicate acceptance of responsibility"), cert. denied, 516 U.S. 857 (1995) (quoting *United States v. Aquilla*, 976 F.2d 1044, 1053 (7th Cir. 1992)).

The court should "look beyond formalistic expressions of culpability and . . . determine whether the defendant has manifested an acceptance of responsibility for his offense in a moral sense." *United States v. Zaragoza*, 123 F.3d 472, 480 (7th Cir .), *cert. denied*, 118 S. Ct. 317 (1997). The district court may consider in that assessment whether the defendant has truthfully described and accepted responsibility for his role in the offense of conviction. If it finds that he did not, his bare

5

statements of remorse and acceptance of responsibility will not compel the reduction. *United States v. Jones*, 52 F.3d 697, 701 (7th Cir. 1995) (citing *United States v. Dvorak*, 41 F.3d 1215, 1217(7th Cir. 1994)). In the present case. Scriver's desire to shift blame to other persons and other causes and his lack of truthfulness undermines his assertion that he has accepted responsibility. See *United States v. Garcia*, 35 F.3d 1125, 1133 (7th Cir. 1994) (lack of truthfulness on the part of defendant is grounds for denying acceptance of responsibility reduction). Scriver has not accepted responsibility for his actions and should not be rewarded with reduction.

### *Safety Valve*

Scriver argues that he should receive the benefit of the sentencing safety valve. The defendant has the burden of proving his eligibility for relief under USSG § 5C1.2. *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997) (citations omitted). In order to satisfy § 5C1.2(5), the defendant " must demonstrate to the court that he has made a good faith attempt to cooperate with the authorities." *United States v. Arrington*, 73 F.3d 144, 148 (7th Cir. 1996). "The burden is on the defendant to come forward and to supply truthfully to the government all the information that he possesses about his involvement in the offense, including information relating to the involvement of others and to the chain of the narcotics distribution." *United States v. Romo*, 81 F.3d 84, 85 (8th Cir. 1996). Scriver has not fulfilled this requirement. The DEA has tried continuously to identify Scriver's source of supply however Scriver has failed to provide the assistance that they had hoped for. Accordingly, Scriver has not met the requirements for the safety valve and his request should be denied.

6

**Motion for a Downward Departure**

### *A. Imperfect Entrapment § 5K2.12*

Section 5K2.12 of the Sentencing Guidelines provides that the district "court may decrease the sentence below the applicable guideline range" if a defendant committed the offense as a result of "serious coercion . . . under circumstances not amounting to a complete defense." USSG §5K2.12 (emphasis added). § 5K2.12 which provides in pertinent part:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. . . .

USSG. § 5K2.12.

Financial difficulties have explicitly been rejected as a basis for a § 5K2.12 departure. Scriver's admission that he became involved in the MDMA deal in order to earn money is, therefore, fatal to his request for a § 5K2.12 departure because it demonstrated that the primary motivation for his criminal conduct was financial. This type of coercion is clearly insufficient to support a § 5K2.12 departure. Economic hardship is one of the few "forbidden" grounds for departure under the guidelines. See USSG 5K2.12 ("The Commission considered the relevance of economic hardship and determined that personal financial difficulties ... do not warrant a decrease in sentence."); *United States v. Rivera*, 994 F.2d 942, 948-49 (1st Cir. 1993).

Even if the motivating factor for Scriver was not financial gain, the Eleventh Circuit has interpreted § 5K2.12 to mean that the coercion or duress ordinarily must rise to the level of a threat

7

of physical injury. See *United States v. Russell*, 917 F.2d 512, 516 (11th Cir. 1990)(finding no coercion or duress where codefendant engaged in "run of the mill persuasion–just words and enticing, as opposed to threatening words."). Here, the only coercion was a belief by Scriver that he could make a significant amount of money there were no threats of any kind. Finally, Scriver's argument that he should receive a reduction for an "imperfect entrapment is also without merit. The Eleventh Circuit rejected a similar argument in *United States v. Miller*, 71 F.3d 813, 817 (11th Cir. 1996), noting that "the guidelines do not authorize a downward departure for entrapment 'under circumstances not amounting to a complete defense.'" Scriver's request should therefore be denied.

### B. Diminished Capacity §5K2.13

A downward departure for diminished capacity is allowed if the defendant committed the offense while suffering from a significantly reduced mental capacity. See USSG § 5K2.13. "Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful. USSG § 5K2.13, comment. (n.1). § 5K2.13 also requires that the diminished capacity be linked to the commission of the offense. See *United States v. Miller*, 146 F.3d 1281, 1285 (11th Cir. 1998).

Scriver's mental and emotional condition are a discouraged factor under USSG §5H1.3 which states that such conditions are not "ordinarily relevant" in determining whether a departure is warranted. The policy statement contained in the diminished capacity guideline, USSG §5K2.13, provides:

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed

8

> to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

USSG §5K2.13.

Appellate courts which have interpreted §5K2.13 have held that two elements are required for a downward departure: "reduced mental capacity and a causal link between that reduced capacity and the commission of the charged offense." *United States v. Prescott*, 920 F.2d 139, 146 (2d Cir. 1990). Accord *United States v. Piervinanzi*, 23 F.3d 670, 684 (2d Cir.), *cert. denied*, 115 S. Ct. 259, 267 (1994); *United States v. Withers*, 100 F.3d 1142, 1147-48 (4th Cir. 1996); *United States v. Goossens*, 84 F.3d 697, 701 (4th Cir. 1996).

For a psychological or behavioral problem to amount to reduced or diminished mental capacity under §5K2.13, there must a corresponding inability to reason. *United States v. Goossens*, 84 F.3d at 701. In other words, the defendant must demonstrate an inability "to process information or to reason." *United States v. Goossens*, 84 F.3d at 701; *United States v. Withers*, 100 F.3d at 1147. See also *United States v. Cantu*, 12 F.3d at 1512 ("In everyday language, 'reduced mental capacity' refers to a lack of full intellectual functioning. It connotes an impairment of the intellect, a failure to be able quickly or fully to grasp ordinary concepts.").

Reviewing courts have rejected downward departures on the basis of diminished capacity under USSG §5K2.13 in cases where defendants have established only mental deficiencies, problems, and conditions, without a concomitant impairment of their ability to reason. See *United States v. Regan*, 989 F.2d 44, 47-68 (1st Cir. 1993) (defendant convicted of embezzlement; doomsday delusions that country was heading toward economic and political chaos not diminished capacity where defendant used "highly skillful and comprehensive methods" to divert bank funds

into Swiss bank accounts); *United States v. Piervinanzi*, 23 F.3d at 674-75, 684- 85 (defendant convicted of conspiracy, wire fraud, money laundering; post- traumatic stress disorder without any impairment of defendant's mental functioning not diminished capacity); *United States v. Barton*, 76 F.3d 499, 502 (2d Cir. 1996) (defendant convicted of receipt of child pornography; untreated depression not diminished capacity); *United States v. Withers*, 100 F.3d at 1148 (defendant convicted of importation of heroin; depression over death of parent not diminished capacity); *United States v. Soliman*, 954 F.2d 1012, 1013-15 (5th Cir. 1992 ) (defendant convicted of importing and receiving child pornography; severe depression not diminished capacity); *United States v. Harpst*, 949 F.2d 860, 862 (6th Cir. 1991) (defendant convicted of embezzlement; suicidal tendencies and manic depression not diminished capacity); *United States v. Hamilton*, 949 F.2d 190, 193 (6th Cir. 1991) (defendant convicted of possession of narcotics with intent to distribute; compulsive gambling addiction, depression, and suicidal tendencies not diminished capacity); *United States v. Pullen*, 89 F.3d 368, 369-71 (7th Cir. 1996) (defendant convicted of armed robbery; schizoid disorder due to the defendant's past sexual and physical abuse not diminished capacity), *cert. denied*, 117 S. Ct. 706 (1997) ; United States v. Edwards, 98 F.3d at 1371 ( defendant convicted of distribution of cocaine base; emotional disorder problems and personality problems consisting of extreme introversion and inability to relate to other people not diminished capacity).

Because none of these disorders or problems undermined the defendants' abilities to make reasoned judgments or to process information, they were not properly classified as diminished capacity under §5K2.13. The critical inquiry is whether the condition affected the defendant's ability to understand and to reason. Consequently, while a district court must evaluate the evidence to determine the existence of a psychological problem, the defendant's ability to reason or to

10

assimilate information vis a vis the charged offense before departing downward on the ground of diminished capacity under §5K2.13. See *United States v. Philibert*, 947 F.2d 1467, 1471-72 (11th Cir. 1991).

In the instant case, Scriver does not suffer from diminished capacity as required by §5K2.13. Notwithstanding Scriver's "major depressive disorder," he was able to process information and to make reasoned judgments. Scriver's cognitive abilities and ability to reason were not compromised by his depression as evidenced by his ability to discuss a series of complex real estate transactions and financial arrangements with James Beeson and the DEA cooperating source during the drug transaction. Indeed, while Scriver made his recent divorce and resulting depression a centerpiece of his defense, it was severely undercut by defense witnesses who testified that Scriver remained attentive to his professional responsibilities and the fact that he not only began dating other woman immediately following his break-up with his wife but actively took part in the Miami nightclub scene. Simply put, there is nothing in the psychological report submitted bu Scriver to suggest that his depression following his marriage impaired his ability to reason and fully appreciate the wrongfulness of his actions. As the Seventh Circuit observed in rejecting a downward departure under USSG §5K2.13, without proof that the defendant's condition affected her ability to reason and to process information, "[t]o set such a low threshold for diminished capacity departures would create incentives for defendants to comb their personal circumstances in order to find evidence of hardship and misfortune. This search, we suspect, would almost always be fruitful given that adversity in its infinite variety comes with the journey of life." *United States v. Withers*, 100 F.3d at 1148.

11

### *C. Extraordinary Acceptance of Responsibility*

As stated above, the government does not believe that Scriver is entitled to any reduction for acceptance of responsibility. The suggestion that he has shown "extraordinary acceptance of responsibility" is patently frivolous. When Scriver began cooperating with the DEA, he indicated that he could lead them to significant narcotics traffickers. He did not do so. On multiple occasions, he failed to do as instructed by the case agents and forced them to the conclusion that he was not sincerely interested in providing assistance to the DEA. Scriver has not earned any consideration for "extraordinary acceptance of responsibility."

### *D. Aberrant Behavior §5K2.20*

The Eleventh Circuit has held that "a district court does have the discretion to depart downward after making a careful factual determination that the defendant's conduct constituted a single, aberrant act." *United States v. Withrow*, 85 F.3d 527, 531 (11th Cir. 1996 ). However, "such an act is not established unless the defendant is a first-time offender and the crime was a *spontaneous and thoughtless act* rather than one which was the result of substantial planning." *Id.* (emphasis added). This holding was reaffirmed in *United States v. Pickering*, 178 F.3d 1168, 1172 (11th Cir.1999), and in *United States v. Bush*, 126 F.3d 1298, 1301 (11th Cir. 1997).

In *Withrow*, a defendant who had pleaded guilty to armed robbery of a motor vehicle (carjacking) under 18 U.S.C. §2119 claimed his offense was the "product of a single, aberrant episode" in his life. 85 F.3d at 528. The facts of the offense indicated that Withrow and three accomplices went to a parking lot, selected a vehicle to rob, followed the car and driver to a gas station, and then unsuccessfully (due to a car crash) attempted to remove the driver from the car at gunpoint. *Id.* at 529. After surveying the differing definitions emerging from other Circuits, the

12

Eleventh Circuit concluded that to be "aberrant" a crime must be "spontaneous and thoughtless. . . rather than one which was the result of substantial planning." 85 F.3d at 531. Where "some planning and preparation" exists, a finding of aberrant behavior is not warranted. *Id.* Moreover, the Eleventh Circuit rejected as a determinative factor testimony from Withrow's mother that the offense "was inconsistent when viewed in the context of his life as a whole." *Id.* A defendant who cannot establish that his criminal conduct "was impulsive, spontaneous, or unplanned" cannot come within the "definitional purview of a single, aberrant act." 85 F.3d at 531-32. Here, Scriver's actions were not impulsive, spontaneous, or unplanned. Indeed, his actions were well planned and nearly flawlessly executed. Furthermore, Scriver admitted to DEA agents during questioning, that he has facilitated an MDMA sale on a previous occasion. Taken together, these factors indicate that this was not a single aberrant act, and a downward departure is therefore not warranted.

                Respectfully submitted,

                GUY A. LEWIS
                UNITED STATES ATTORNEY

By: *[signature]*

                DANA O. WASHINGTON
                Assistant United States Attorney
                Court No.: A5500418
                500 East Broward Blvd., Suite 700
                Fort Lauderdale, FL 33394
                Phone: (954) 356-7255
                Fax: (954) 356-7336
                E-mail: dana.washington@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via facsimile and U.S. Mail this day, March 6, 2001 to:

Neil M. Schuster, Esquire
407 Lincoln Road, Suite 11-B
Miami Beach, FL 33139
Fax: (305) 534-5470

Jeanne Baker, Esquire
2937 S.W. 27th Avenue, #202
Miami, FL 33133
Fax: (305) 445-9666

Todd Eisinger
U.S. Probation Officer
Room 315
300 N.E. First Avenue
Miami, FL 33132
Fax: (305) 523-5496

DANA O. WASHINGTON
ASSISTANT UNITED STATES ATTORNEY